CHARLEY QUINN v. STATE.

No. A-1498.    Opinion Filed January 13, 1913.

(128 Pac. 1104.)

1.    INTOXICATING LIQUORS—Possession With Intent to Sell—Evidence. The mere possession of beer, without any facts from which it could be reasonably inferred that the same was had for the purpose and with the intent of sale, is not sufficient upon which to base a judgment of conviction upon a charge of having such beer in possession with intent to sell same.

2.    SAME. The possession of an unusually large quantity of beer, or other intoxicating liquor, is a circumstance to be considered by the jury in arriving at a verdict. But such circumstance must be supported by other testimony from which, taken together, a legitimate deduction of guilt can be drawn.

3.    SAME. This court has universally held that the intent with which intoxicating liquors are possessed is an essential element of the crime of unlawful possession with intent to sell same, and it is the duty of the prosecuting officer to keep this in mind and introduce at the trial testimony which will warrant the jury in finding as a reasonable deduction from all the evidence that the intent to sell existed, and not merely the possession. Both possession and intent to sell are indispensable to a conviction under this provision of the law.

(Syllabus by the Court.)

*Appeal from Love County Court;*
*R. A. Keller, Judge.*

Charley Quinn was convicted of violating the prohibitory law, and he appeals. Reversed.

*Eddleman & Graham,* for plaintiff in error.

*Smith C. Matson* and *E. G. Spilman,* Asst. Attys. Gen., for the State.

ARMSTRONG, J. The plaintiff in error, Charley Quinn, was tried and convicted at the October, 1911, term of the county

court of Love county on a charge of having unlawful possession of intoxicating liquor with intent to sell the same, and his punishment fixed at a fine of $50 and imprisonment in the county jail for a period of 30 days. Deputy Sheriff Blake testified on behalf of the state that he searched a livery stable belonging to the accused and found 35 bottles of beer in a box of cold water; that he was assisted by Gus Culwell; that when they went to the barn the accused told him to search all he wanted to, and when the beer was found the accused told him it was his; further, that the accused was talking to him early on the afternoon before the search and told him that he had a barrel of beer coming in on the train from Ft. Worth, this particular testimony being as follows:

"Q. Before you had the search warrant delivered to you, Mr. Blake, did you have a conversation with Chas. Quinn? A. Over at the train, just as the train got ready to pull out. Q. Did he make any statement to you about having any beer there? A. Yes, sir; he said he had a barrel of beer there in the station, and said, 'I have it for my own use, and I want to take it out and take it up to the house,' and I said, 'There is no law to keep you from it.'"

Gus Culwell testified that when they went to the barn the accused told them to go ahead and search. Another witness on behalf of the state testified that some one, he did not remember who, gave him a bottle of beer at this barn a considerable length of time prior to the date of this search. At the conclusion of the state's testimony, counsel for the accused asked the court to advise the jury to return a verdict of not guilty, which motion was overruled.

There was a total failure upon the part of the state to establish the intent to sell the beer in question. The motion to advise a verdict should have been sustained. The proof introduced on behalf of the accused following the overruling of the motion to advise a verdict, in our judgment, was a complete explanation of why he was in possession of the beer and the purpose for and intent with which he purchased it and had it in possession.

Prosecuting attorneys and courts should be vigilant in enforcing the provisions of the prohibitory law, but, unless one is in fact violating the law, he should not be subjected to such prosecu-

tion.  The conviction in this case should not have resulted, and when it did the trial court should not have permitted it to come to this court on appeal.  The mere possession of·intoxicating liquor when at a legitimate place of business or one's house, not a place of public resort, has never been held sufficient by this court to sustain a conviction when there is a reasonable explanation on behalf of the accused concerning the purpose and intent with which the liquor was held; and, although the possession of an unusual quantity of liquor is a circumstance to be considered by the jury in determining the guilt or innocence of a person on trial charged with this character of offense, yet that alone is not sufficient.  It is a matter of common knowledge that many good citizens order a cask of·beer at one shipment for legitimate use.  There is no rule of law which makes the possession of a quantity· of liquor for legitimate purposes presumptive evidence of guilt under the provisions of the prohibitory law upon which this prosecution is based, and, in the absence of a proper statute making it so, we cannot uphold this character of conviction.

The judgment is reversed, and the cause remanded, with directions to grant a new trial.

FURMAN, P. J., and DOYLE, J., concur.